IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MCALLISTER & QUINN, LLC,<br><br>   Plaintiff,<br><br>   vs.<br><br>JESSICA VENABLE, SCOTT TOMINOVICH, CHRIS FISH, JOO YOUNG LEE, CASEY NEWELL, and JAKE PARDUHN,<br><br>   Defendants. | Case No. 1:22-CV-00379-APM |

## SECOND JOINT STATUS REPORT

Pursuant to the Court's March 27, 2022 Minute Entry, Plaintiff McAllister & Quinn, LLC, and Defendants Jessica Venable, Scott Tominovich, Chris Fish, Joo Young Lee, Casey Newell, and Jake Parduhn, by and though counsel, hereby provide the Court with a Second Joint Status Report.

To continue negotiations, the parties exchanged correspondence on the outstanding issues on Monday, March 28, 2022 and on Tuesday, March 29, 2022. *See* Exhibit 1 (Defendants' email), Exhibit 2 (Plaintiff's letter), and Exhibit 3 (Defendants' email). The parties met and conferred on the matters on Wednesday, March 30, 2022. The parties have reached agreement on a protocol for forensic review and deletion efforts as set forth in Exhibit 4 hereto. Despite diligent efforts by both parties, the parties are still at an impasse on some items, which are further outlined below, along with the parties' respective positions.

    I.    **Plaintiff's Positions Concerning Impasse on Some Items.**

    A.    **Defendants' Electronic Devices & Accounts.** Plaintiff's objective is to arrive at a final agreement for securing the permanent deletion of *all* M&Q documents and information that

remains in Defendants' care, custody, and control. On a meet and confer that took place on Wednesday, March 30, 2022 (which was otherwise productive), Defendants' counsel proposed narrowing the list of devices to be examined (by excluding devices that Defendants previously identified) with arguments about how examining all of these devices would be "too expensive," that the devices defendants imaged and that defendants agree to submit for examination contain "the most relevant information," and that the proposed devices "will contain the bulk of what you need." Defendants' arguments are a function of the scope and volume of M&Q information that Defendants improperly retained, and Defendants' characterizations confirm that – if only the proposed devices are provided for examination – some amount of M&Q information will nonetheless remain in Defendants' possession. Plaintiff does not consent to the retention of *any* M&Q information, even if (in Defendants' view) such information is less "relevant" or constitutes less volume than the information that is submitted for deletion.

Moreover, Defendants have consistently failed to represent that Defendants did not copy, duplicate, or create derivative works from the M&Q materials and information that Defendants retained. Plaintiffs are therefore unwilling to exclude devices that Defendants previously identified in the Standstill Agreement, Dkt. 13 at 6-7, or otherwise disclosed as containing M&Q information. To guard against the risk of loss of trade secret protection or consequences resulting from the disclosure of client confidential information, a forensic evaluation must be inclusive of all known sources of M&Q information in defendants' possession, custody, or control, including (1) the devices and accounts expressly identified in the Standstill Agreement, Dkt. 13 at 6-7; and (2) the devices and accounts identified in Plaintiff's February 10, 2022 Email that provides "a summary of the collection and preservation of documents" by defendants. Dkt. 2-21 (Feb. 10,

2022 email identifying "[p]ersonal e-mail accounts," "iCloud or Google Drive accounts," "personal laptops or ipads," and "personal cell phones").

**B.     Potential Application of Search Terms To Confirm Defendants' Designations of "Personal" Data.**  Plaintiff does not propose broadly using search terms against Defendants' devices, because (among other reasons) a broad application of search terms would yield privileged communications and other materials for a time-consuming attorney review, and this process would create delay and add expense.  Plaintiff instead proposes, first, a review of file inventories and, second, collaboration between counsel to confirm the file names for files that contain M&Q information (and the file names for files that do not contain M&Q information and therefore can be excluded from further review).  A review of file names (as opposed to the files themselves) will not result in the inadvertent disclosure of personal or unrelated information.  Defendants are permitted to designate specific file names as "personal" so that such files can be removed from further analysis.

Plaintiff simply proposes a "back end" application of search terms, as necessary and on a case-by-case basis, to test any defendant's designation of files as "personal" before such files are excluded from further analysis.  *See* Exhibit 4, ¶ 7 (Review and Culling of Initial Imaged Device & Account Inventories.  Plaintiff needs an "insurance policy" against the possibility of certain file names failing to reveal the existence of M&Q information.  Any application of search terms would be tailored for a specific defendant based on the particular M&Q documents that are found (by a review of the file names) to reside on that defendant's devices, and such search terms would be targeted and highly specific to that defendant.   Should the use of confirmatory search terms be required, the forensic vendor would report the "hits" to counsel for both parties, and the results

(specific documents) would be delivered to Defendants' counsel for further evaluation and for making a report to Plaintiff's counsel about the results and the M&Q information identified.

      **C.**    **Defendants' Document Preservation Costs.**  M&Q has agreed to bear the cost of the forensics work of its vendor, Digital Mountain, including costs associated with (1) verifying the adequacy of the images of devices prepared by Defendants; (2) the forensic examination of all available images of Defendants devices that may include M&Q information; (3) preparing for Defendants' review file inventories of all non-system files on Defendants' devices so that personal information can be isolated; (4) preparing at Defendants' instruction culled inventories of all non-system files on Defendants' devices that exclude Defendants' personal information; (5) preparing inventories of all M&Q information on Defendants' devices; (6) coordinating with Plaintiffs' forensics vendor the permanent deletion of all M&Q information on Defendants' devices; and (7) any similar efforts for additional devices that Defendants have not yet imaged or that may be identified through the forensic examination process.  M&Q is aware of no authority supporting Defendants' position that a plaintiff must bear costs associated with a defendant's compliance with its electronic document preservation obligations.  Moreover, Defendants have not identified any such authority.

      **D.**    **Identification and Destruction of M&Q Information in Defendants' Possession, Custody, or Control & Next Steps for Possible Resolution of Remaining Claims.**  As set forth in M&Q's preliminary injunction motion, Dkt. 5-2 at 7-12, and as further established during the March 18, 2022 hearing, Dkt. 24, Tr. 47:9-14, 48:15-49:24 (Cortney Watson), Defendants improperly retained M&Q confidential and trade secret information post-separation. Defendants have consistently failed to represent that Defendants did not copy, duplicate, or create derivative works based on M&Q materials and information.  *Id*. at 76:19-23.   And, Defendants

conceded that, post-separation, they continued to use information obtained during the course of their employment at M&Q, at least with respect to "introduced clients." *Id*. To protect its trade secret information and to satisfy its confidentiality obligations in favor of its customers, M&Q must identify and permanently delete all M&Q information that remains in Defendants' possession, custody, or control. Accordingly, M&Q cannot agree to a resolution that does not include:

(1) the identification and destruction of *all* M&Q documents and information in Defendants' care, custody, or control;

(2) certification of such destruction in accordance with the agreed protocol;

(3) sworn representations from each Defendant that all electronic devices that may include M&Q information have been identified to M&Q, all M&Q information (whether paper or electronic) has been returned or destroyed, no copies of M&Q information have been retained, and insofar as any Defendant becomes aware of any M&Q information not previously disclosed such Defendant will immediately notify M&Q so that arrangements can be made for the immediate return or destruction of such information; and

(4) an appropriate remedy should Defendants' sworn representations prove false.

Consequently, mediation will not assist the parties in resolving the issues presented by M&Q's Motion for Preliminary Injunction. However, M&Q agrees to participate in a mediation on all remaining claims after the parties have reached a resolution on the issues presented by M&Q's Motion for Preliminary Injunction.

    **II.**    **Defendant**

Defendants believe the parties are at an impasse on scope, costs, and the situations in which personal files should be searched. Defendants propose the following:

1) **Scope of personal devices**

Defendants have already imaged personal devices which they believe may have M&Q documents on them and have agreed to the general parameters for indexing, identifying and destroying documents for the personal devices already imaged. The protocol, which Defendants have agreed to, anticipates that it is possible that other devices may need to be imaged. Defendants are concerned that Plaintiff will not limit the scope of all potential personal devices and that there is no temporal scope for the collection.

To address Plaintiff's concern and prevent unnecessary and costly imaging of additional personal devices, Defendants agree to sign a declaration stating that to best of their knowledge they have provided all personal devices which they believe have M&Q documents. To the extent at a later point, in the unlikely situation in which Defendants learn that any personal devices have M&Q material, they will promptly submit their personal devices for imaging by a third-party vendor and proceed with the procedure outlined above (including providing metadata). Defendants will not agree to include in the declaration any type of penalty or opportunity for M&Q to file suit again.

2) **Searching personal files**

Plaintiff explained to Defendant that it wanted to research the right to search personal files in very limited circumstances in the event that Plaintiff had questions or concerns about the adequacy of the file index and that Defendants' counsel would be the gatekeeper of such review. While Defendants understand Plaintiff's desire to reserve this objection, they have concerns about the scope and potential breadth of these searches and believe they are unnecessary given the proposal Defendants have outlined above.

3) **Costs**

Defendants propose to split the costs of further processing of the imaging of their personal devices with M&Q. Defendants have already incurred substantial costs in imaging their own devices, even though M&Q's own policies and procedures for departing employees is to have the employees simply delete files off their personal devices.

4) **Resolving matter**

Defendants request that this Court refer this entire case, including the outstanding issues related to the protocol and the preliminary injunction, to the Court's mediation program. Defendants believe that a neutral third party can help move the parties toward resolution without burdening the Court with minor disputes and save this Court from ruling on three substantial motions (Plaintiff's motion for injunction, Plaintiff's motion to expedite discovery, and Defendants' motion to dismiss). Because Defendants have already imaged their personal devices, have agree to not use any alleged trade secret or confidential information, are agreeing to sign declarations related any other potential personal devices, there is a standstill order and place, and their Introduced Clients have started to request their client files, Plaintiff will not suffer any harm by referring the case to mediation.

Respectfully submitted, this 1st day of April 2022.

/s/ Joel D. Bush, II
Joel D. Bush, II
(*admitted pro hac vice*)
jbush@kilpatricktownsend.com
Kathleen B. Dodd Barton
(*admitted pro hac vice*)
kbarton@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Alexander M. Bullock
D.C. Bar No. 446168
abullock@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
607 14th Street, NW
Suite 900
Washington, DC  20005
Telephone:  (202) 508-5831
Facsimile:  (202) 585-0057

*Counsel for Plaintiff McAllister & Quinn, LLC*

/s/ Anita Mazumdar Chambers
R. Scott Oswald
D.C. Bar No. 458859
SOswald@employmentlawgroup.com
Anita Mazumdar Chambers
D.C. Bar No. 1046845
achambers@employmentlawgroup.com
**The Employment Law Group, P.C.**
1717 K Street NW, Suite 1110
Washington, D.C. 20006-5345

*Counsel for Defendants Jessica Venable, Scott Tominovich, Chris Fish, Joo Young Lee, Casey Newell, and Jake Parduhn*

7

US2008 19934082 3

## CERTIFICATE OF SERVICE

      This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

DATED: April 1, 2022.
                            /s/ Joel D. Bush, II
                            Joel D. Bush, II
                            (*admitted pro hac vice*)

                            *Counsel for Plaintiff McAllister & Quinn, LLC*