IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MCALLISTER & QUINN, LLC,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>JESSICA VENABLE, SCOTT TOMINOVICH, CHRIS FISH, JOO YOUNG LEE, CASEY NEWELL, and JAKE PARDUHN<br><br>　　Defendants. | Case No.  1:22-CV-00379-APM |

**PLAINTIFF MCALLISTER & QUINN, LLC'S REPLY IN SUPPORT OF
MOTION FOR NARROWLY TAILORED EXPEDITED DISCOVERY**

Plaintiff McAllister & Quinn, LLC ("M&Q" or "Plaintiff"), respectfully files this Reply in support of its Motion for Narrowly Tailored Expedited Discovery (the "Motion"), Dkt. 23.

### I.　INTRODUCTION

Since their resignations on Monday, January 3, 2022, Defendants have maneuvered, evaded, dodged, and avoided returning in full the M&Q materials that Defendants wrongfully retained following their abrupt and coordinated departures. Defendants' March 31, 2022 Opposition to Plaintiff's Motion for Narrowly Tailored Expedited Discovery (the "Opposition"), Dkt. 27, confirms both Defendants' delay strategy and the reasonableness of Plaintiff's motion to allow narrow discovery. As set forth in its Motion, Br. at 3-6, M&Q's request for narrow discovery satisfies the "reasonableness" test in that (1) M&Q's motion for preliminary injunction is pending, (2) M&Q – to quell any purported confusion – served narrow Early Rule 34 Document Requests confined to issues addressed in its preliminary injunction motion, Ex. 1 hereto, (3) M&Q seeks discovery to guard against the further loss of any metadata, (4) the burden on Defendants is minimal, and (5) at the time of M&Q's Motion each of the defendants had been personally served,

Dkt. 13, had appeared (roughly 30 days before M&Q filed its Motion, Defendants' counsel entered a general appearance), Dkt. 11, the Court had entered a Standstill Agreement, Dkt. 13, and Defendants' counsel had responded to the pending Motion for Preliminary Injunction, Dkt. 18. Defendants' Opposition, which argues otherwise, misapprehends both the law and the facts.

## II.  ARGUMENT

### A.  The Pending Motion for Preliminary Injunction and the Narrow, Focused Nature of the Requests Weigh in Favor of Granting the Discovery M&Q Seeks.

Defendants' own authority establishes that, "[u]nder the reasonableness test, 'courts consider the reasonableness of the request in light of the *entire* record to date and *all* of the surrounding circumstances.'" *True the Vote, Inc. v. Internal Revenue Serv.*, No. 13-734 (RBW), 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014) (quoting *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)) (emphasis added).  In the four-month period since their resignations, Defendants' only consistent positions have been obfuscation and delay.  Setting aside Defendants' incomplete and sometimes wholly inaccurate representations, and counsel's claim that Defendants purportedly "have been ready since January to return any McAllister and Quinn documents," March 28, 2022 Transcript ("Tr.") 80:25-81:1, Defendants now object to a forensic review of devices that Defendants themselves identified as including M&Q information.  Dkt. 28, ¶ 2.  Indeed, the Standstill Order, as entered, identifies a desktop computer, a laptop, and two iPads that include M&Q information, Dkt. 13 at 6-7, that Defendants now attempt to exclude from forensic analysis.  *Id*. at ¶¶ 2, 3.  Based on Defendants' representations to counsel and to the Court, M&Q understood that all known devices had been properly preserved and imaged by Defendants.  *See* Defendants' Feb. 10, 2022 Email, Dkt. 2-21 (with "a summary of the collection and preservation of documents" by defendants identifying "[p]ersonal e-mail accounts," "iCloud or Google Drive accounts," "personal laptops or ipads," and

-2-

"personal cell phones") and Tr. 78:12-15 (representing that Defendants' devices were "inventoried" and "[r]ight now those devices are imaged"). But that is not the case.

Weeks after the Standstill Order issued and two weeks after the preliminary injunction hearing, M&Q learned that Defendants failed to collect and image multiple devices and at least one cloud account that include M&Q information. *See* April 1, 2022 Protocol, ¶ 2 (Additional Devices and Accounts Not Yet Imaged). Defendants now propose a narrowed list of devices to be examined – excluding devices that Defendants previously identified – arguing that the expense of compliance is "too great," that the devices Defendants elected to image and agreed to submit for examination contain "the most relevant information," and that the proposed devices purportedly include "the bulk of" the M&Q information wrongfully retained by Defendants. Dkt 28 at 2. Defendants' willingness to return *only a portion* of M&Q's information to avoid "costly imaging," Dkt. 28 at 6, shows that Defendants do not intend to make devices available to M&Q voluntarily or absent compulsory discovery. *Id*.; *see also* Dkt. 24, Tr. 79:15-18 (confirming Defendants' "view is that that's [the identification of M&Q information in Defendants' possession] more appropriate in the discovery phase, because right now everything has been imaged with the vendor and they are holding that information."). Under such circumstances, the Court may in its discretion permit limited discovery. *Garnett v. Zeilinger*, No. 17-CV-1757 (CRC), 2017 WL 8944640, at *1 (D.D.C. Dec. 15, 2017) (quoting *Watts v. SEC*, 482 F.3d 501, 507 (D.D.C. 2007)) ("a district court retains 'broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'").

Ignoring their own observation that "[t]he Federal [Rules] of Civil Procedure do not outline the requirements [for obtaining] expedited discovery," Opp. at 2, Defendants criticize a purported infirmity in M&Q's Motion, reading into the rules a requirement that "the contents of

the discovery request . . . typically [are] attache[d] to [a] motion." *Id*. at 4. Defendants also complain that "[n]owhere does M&Q provide any *specific* requests for documents, devices, deposition, or interrogatories." *Id*. at 5 (emphasis in original). To the contrary, the Motion clearly states that M&Q seeks to "obtain forensic imaging and metadata in conjunction with the issues related to M&Q's preliminary injunction" request. Br. at 3. In any event, to address any perceived lack of specificity, on April 4, 2022, M&Q served Early Rule 34 Requests for Production of Documents to Defendants seeking three tailored categories of documents. M&Q requested the following limited categories of document:

> 1. All M&Q Information that you obtained, received, created, or otherwise came to possess while employed by M&Q that may reside on any laptop, desktop, tablet, ipad, cell phone, flash drive, external hard drive, cloud storage account, or any other electronic media identified by Defendants (including the devices identified in Defendants' February 19, 2022 Email, Dkt. 2-21, the Standstill Order, Dkt. 13, or the Protocol, Dkt. 28-4) that have not yet been imaged, and that are not the subject of the agreement set forth in Paragraph 3 of the April 1, 2022 Protocol about the "Delivery of Existing Images by CDS."
>
> 2. All documents, including but not limited to email and text messages, that you exchanged with any other Defendant regarding any dispute or dissatisfaction with M&Q about your employment, your (or any other Defendant's) potential employment by a competitor of M&Q, or your (or any other Defendant's) resignation (or potential resignation) from M&Q, and that were generated or exchanged between January 1, 2021 through the current date.
>
> 3. All documents, including but not limited to email and text messages, that you exchanged with any other Defendant regarding your (or any other Defendant's) efforts to obtain termination letters from any client to which you provided services during your employment by M&Q, and that were generated or exchanged between January 1, 2021 through the date of your separation.

-4-

Ex. 1 hereto.  Under Defendants' own authority, the Court may in its discretion permit such limited discovery before the parties meet and confer under Fed. R. Civ. P. 26(f).  *Garnett*, 2017 WL 8944640, at *1.

**B.     M&Q Seeks Narrowly Tailored Discovery for the Legitimate Purpose of Guarding Against Further Loss of Metadata with Only Minimal Burden to Defendants.**

Defendants assert that "M&Q has not demonstrated a valid purpose for requesting expedited discovery" because "M&Q has failed to allege any actual harm." Opp. at 8.  But seeking expedited discovery when faced with spoliation constitutes a legitimate purpose.  Moreover, Defendants' argument ignores that Defendants indisputably accessed M&Q confidential information well after document preservation obligations had attached and thus, among other things, permanently altered metadata by overwriting last accessed dates.  Br. at 4; Tr. 9:9-23 (Testimony of Mark Eskridge) (confirming the need to "create a forensic image, which freezes the computer data in time so that it can be further examined without making any changes to the data" such as "last access dates");[1] *id.*, 12:9-21 (describing access to M&Q information by Defendant Venable on February 17, 2022); *id.*, 22:10-21 (describing access to M&Q information by Defendant Fish on March 3, 2022); *see also* Dkt. 22-1 at 1 (suggesting an instruction by counsel to access multiple M&Q files post-separation).

In other words, whatever the reason, metadata that resided on electronic media that remained in Defendants' possession (rather than with counsel or an outside vendor) was altered on at least two separate occasions since the filing of this lawsuit – by Defendant Venable at or around the time of the negotiation of a potential standstill agreement and by Defendant Fish roughly 10

---

[1] Defendants did not cross-examine Mr. Eskridge about the need for forensic images to "freeze the computer data in time so that it can be further examined without making any changes to the data," *see generally* Tr. 37:22 – 44:18, nor did Defendants present any contrary evidence.

days after the Court's entry of the Standstill Agreement. Tr. 12:9-21, 22:10. In short, data has been overwritten while in Defendants' care and therefore critical evidence is no longer available about Defendants' post-separation access to or use of M&Q's confidential documents. Accordingly, permitting discovery related to the electronic devices and accounts controlled by Defendants that have not yet been imaged is necessary to guard against further harm and more than satisfies the legitimate purpose prong of the "reasonableness" test. *Cf. True the Vote*, 2014 WL 4347197, at *4-5; *see also Simon v. Republic of Hungary*, No. 10-017770 (BAH), 2012 WL 1306972, at *5-6 (D.D.C. Oct. 19, 2012) (finding that "'the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if expedited relief is not granted.'") (citation omitted).

Defendants contend that M&Q, in support of its Motion, purportedy failed to state "a valid reason to presume that Defendants *have already* or will *inevitabl[y]* engage in misappropriation of trade secrets." Opp. at 8 (emphasis in original). Defendants' argument wholly ignores that the Motion articulates a "legitimate need" to "'preserve information as it currently exists.'" Br. 4. *True the Vote*, upon which Defendants rely, in fact supports *M&Q's* argument. Opp. at 8. The court in *True the Vote* considered a motion for expedited discovery based on alleged spoliation. 2014 WL 4347197, at *4. After conducting an analysis, the court found no spoliation. *Id*. However, the court did not reject the spoliation argument as a legitimate purpose for expedited discovery. *Id*. Rather, the court found that a related, earlier-filed lawsuit did not "create an obligation on the [IRS] to preserve evidence related to this [later-filed] case." *Id*. Because a preservation obligation did not exist, the movant could not establish any "material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably

-6-

US2008 19940805 4

foreseeable litigation." *Id*.  In this case, in sharp contrast, a preservation obligation indisputably attached no later than the date of Plaintiff's February 11, 2022 Complaint.

Defendants also argue that M&Q's claim of "misappropriation is purely speculative" and therefore cannot "validat[e] a request for expedited discovery."  Opp. at 8 (citing on *Dunlap*, *Sinclair Nat'l Bank,* and *True the Vote*).  But *Dunlap, Sinclair Nat'l Bank,* and *True the Vote* are entirely consistent with M&Q's position that "'the need to preserve information as it presently exists,'" Br. 4, supports a finding for expedited discovery.  Here, in at least two separate instances metadata has been altered, Tr. 12:9-21, 22:10; Dkt. 22-1 at 1, which is in stark contrast to a request for expedited discovery based upon a "'series of assumptions' regarding document destruction" as in *Dunlap*, "speculative and conclusory affidavits" as in *Sinclair Nat'l Bank*, or "distrust" without "any 'factual basis,'" as in *True the Vote*.  Opp. at 8.

Finally, Defendants will not be unduly burdened by the requested discovery.  Relying on *True the Vote,* Defendants argue "they have already made significant efforts to identify, return, and preserve any allegedly confidential information," obviating the need for expedited discovery.  Opp. at 8.  But *True the Vote* involved expedited discovery directed to the IRS seeking access to IRS computers to conduct searches that "would result in the disclosure of tax returns and return information of individuals and entities that are not parties to this lawsuit in violation of 26 U.S.C. § 6103(a)[.]" *Id.*, 2014 WL 4347197, at *7.  The IRS, in opposing the motion, adduced evidence that "[o]ver 250 IRS employees ha[d] spent over 120,000 hours working to preserve and produce files related to this case and other Congressional investigations [and] [t]he IRS's efforts have cost nearly $10 million." *Id.*, at *8 (last two alternations in original).  Given the breadth of the requests and the quantified burden on the IRS, the court found that the reasonableness factors weighed in favor of the IRS and did not permit expedited discovery.  *Id*.  Defendants cannot draw any

reasonable comparison between the discovery sought from the IRS and the narrow, focused discovery that M&Q seeks here.

Defendants' reliance on *Attkisson* in support of their assertion that "complying with the request would significant[ly] burden defendants," Opp. at 9, is equally misplaced. *Attkisson* involved claims against unnamed individuals at the U.S. Postal Service. *Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015). Attkisson, an investigative reporter, prepared several stories for CBS News related to the "Fast and Furious" incident and the 2012 attack on the U.S. compound in Benghazi, Libya. *Id*. at 158. Attkisson alleged that in mid-2011, she began to notice anomalies with electronic devices in her home. *Id*. The issue persisted and Attkisson hired a forensics expert to analyze her laptop. *Id*. at 159. The forensics expert confirmed that, among other things, sophisticated surveillance software had been installed on Attkisson's computer and "an unauthorized communications channel" was linked to an IP address associated with the U.S. Postal Service. *Id*. Attkisson sought early discovery to attempt to identify the specific individuals involved in surveilling her electronic devices. *Id*. In so doing, she proposed serving interrogatories that included 53 subparts. *Id*. at 163. Attkisson also proposed document requests. *Id*. The proposed discovery, however, was far-reaching. *Id*. For example, several interrogatories purported to require the surveying of "all persons employed by any agency of the federal government" for responsive information. *Id*. at 163. The Court concluded that Attkisson effectively sought "merits" discovery that would require defendants to "expend[] a huge amount of resources," which weighed in favor of denying the motion for expedited discovery. *Id*. at 165. Defendants cannot credibly argue that M&Q's three narrow requests for production create a similar burden.

Here, M&Q has served three document requests focused on issues raised by its preliminary injunction motion. *Compare* Ex. 1, Request No. 1 (seeking "M&Q Information that you obtained, received, created, or otherwise came to possess while employed by M&Q" residing on personal devices not yet imaged) *with* Preliminary Injunction Motion, Dkt. 5-2 at 3-4 (seeking, among other things, an order permitting access to "Defendants' electronic devices (including metadata); *compare* Ex. 1, Request No. 2 (seeking documents "your (or any other Defendant's) potential employment by a competitor of M&Q") and Request No. 3 (seeking documents "regarding your (or any other Defendant's) efforts to obtain termination letters from any client to which you provided services during your employment by M&Q") *with* Motion at 1 (describing Defendants' resignations and employment with a competitor and Defendants' concealment of client termination letters from M&Q) *and* Reply, Dkt. 20 at 5 (identifying undisputed facts including that "Defendants synchronized their six resignations (so that they were all announced within a 37-minute period of one other) and their collective intention to accept positions with Thorn Run, a direct competitor of M&Q" and "Defendants concealed client termination notices from M&Q for up to two months before they announced their departures) (citation omitted). In fact, the court in *Attkisson* observed that "[w]hen the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery." 113 F. Supp. 3d at 165. Thus, under Defendants' own authority, the burden to defendants in responding to three document requests is low and therefore weighs in favor of granting M&Q's Motion.

**C.  M&Q's Motion, Filed 30 Days After Defendants' Appearance, is Not "Too Early."**

Defendants contend that M&Q's request is too far in advance of typical discovery. Opp. at 3. But M&Q's Motion is not at all early. First, M&Q filed its Motion on the eve of the March 18, 2022 Hearing on Plaintiff's pending Motion for Preliminary Injunction – roughly 30 days after

Defendants' general appearance. Dkt. 23.  In the ordinary course, a Scheduling Order would issue on or before April 19, 2022 – "within . . . 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b).  Second, *Garnett v. Zeilinger*, No. 17-CV-1757 (CRC), 2017 WL 8944640 (D.D.C. Dec. 15, 2017), upon which Defendants rely, confirms that "a court may order expedited discovery prior to the meet and confer[.]" *Id*., at *1 (citing Fed. R. Civ. P. 26(d)); *see also id.*, at *3 (granting, in part, motion for expedited discovery before formal discovery commenced, requiring the production of documents, and permitting limited 30(b)(6) deposition).  Finally, the briefing associated with M&Q's Motion will close eight business days before a Rule 16 Scheduling Order would issue in the ordinary course of litigation.

Moreover, the authority upon which Defendants rely pre-dates the 2015 Amendment to Fed. R. Civ. P. 16.  The 2015 Amendment reduced "[t]he time to issue a scheduling order . . . to the earlier of 90 days . . . after any defendant has been served, or 60 days after . . . any defendant has appeared." Fed. R. Civ. P. 16(b) Advisory Committee's Note to 2015 Amendment.  The cases upon which Defendants rely for their argument that it is "too early" for discovery were decided at a time when discovery generally commenced 90 to 120 after the filing or service of a complaint. Opp. at 3-4 (relying on *Landwehr v. F.D.I.C.*, 282 F.R.D. 1 (D.D.C. 2010), *Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014), *Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015), and *True the Vote, Inc. v. Internal Revenue Serv.*, 2014 WL 4347197 (D.D.C. Aug. 7, 2014).  Put simply, Defendants' authority ignores the 2015 Amendment that was expressly intended to "reduce the delay [of discovery] at the beginning of litigation." Fed. R. Civ. P. 16(b) Advisory Committee's Note to 2015 Amendment.

Finally, consistent with the spirit of Fed. R. Civ. P. 16(b) and 26(f), and in an effort to keep this matter moving, M&Q sought Defendants' participation in a Rule 26(f) Conference.  Ex. 2,

April 4, 2022 Letter. Defendants' counsel responded promptly by email agreeing to such a conference and proposing that the parties plan to confer late in the afternoon on April 6, 2022. Ex. 3. April 4, 2022, 2:15 pm Chambers Email. Roughly 44 hours later, Defendants unilaterally cancelled the scheduled Rule 26(f) Conference, electing to postpone until such time as the Court rules on Defendants' Motion to Dismiss. *Id.* at April 6, 2022, 10:47 a.m. Chambers Email.

### III. CONCLUSION

For the foregoing reasons and for the reasons set forth in its opening brief, Dkt. 23, M&Q respectfully requests that the Court grant its Motion for Narrowly Tailored Expedited Discovery.

Respectfully submitted, this 7th day of April, 2022.

| | |
|---|---|
| Alexander M. Bullock<br>D.C. Bar No. 446168<br>abullock@kilpatricktownsend.com<br>**KILPATRICK TOWNSEND &<br>  STOCKTON LLP**<br>607 14th Street, NW<br>Suite 900<br>Washington, DC  20005<br>Telephone:  (202) 508-5831<br>Facsimile:  (202) 585-0057 | /s/ Joel D. Bush, II<br>Joel D. Bush, II<br>(*admitted pro hac vice*)<br>jbush@kilpatricktownsend.com<br>Kathleen B. Dodd Barton<br>(*admitted pro hac vice*)<br>kbarton@kilpatricktownsend.com<br>**KILPATRICK TOWNSEND &<br>  STOCKTON LLP**<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA  30309-4530<br>Telephone:  (404) 815-6500<br>Facsimile:  (404) 815-6555<br><br>*Counsel for Plaintiff McAllister & Quinn, LLC* |

-12-

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

DATED:  April 7, 2022.

/s/ Joel D. Bush, II
Joel D. Bush, II
Admitted *Pro Hac Vice*

*Counsel for Plaintiff McAllister & Quinn, LLC*